# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| **JOHN PICKENS,** )<br>)<br>  **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**CITY OF KNOXVILLE, TENNESSEE,** )<br>**PAUL NOEL, in his individual capacity,** )<br>**PHYLLIS TONKIN, in her individual** )<br>**capacity, PRESTON HUDDLESTON, in his** )<br>**individual capacity, WILLIAM WILSON, in** )<br>**his individual capacity, and ERIC** )<br>**VREELAND, in his individual capacity,** )<br>)<br>  **Defendants.** ) | **Case No.:**_____<br>**JURY DEMANDED** |

## COMPLAINT

Comes the Plaintiff, John Pickens, by and through counsel, and sues the Defendant City of Knoxville, Tennessee, Paul Noel, in his individual capacity, Phyllis Tonkin, in her individual capacity, Preston Huddleston, in his individual capacity, William Wilson, in his individual capacity, and Eric Vreeland, in his individual capacity, pursuant to 42 U.S.C. § 1983 for compensatory damages in an amount to be proven at trial; punitive damages, except as the City of Knoxville Tennessee only; the costs of this cause, discretionary and otherwise; attorney fees and costs pursuant to 42 U.S.C. § 1988; and for his cause of action claims and alleges as follows:

1. The Plaintiff John Pickens is a citizen and resident of Knox County, Tennessee. Plaintiff was a law enforcement officer employed by the City of Knoxville, Tennessee, until his termination on June 23, 2025.

2. The Defendant City of Knoxville, Tennessee (hereinafter referred to as **"Defendant City of Knoxville, Tennessee"**), is a municipality and former employer of Plaintiff at the Police Department at the City of Knoxville, Tennessee.

3. The Defendant Paul Noel (hereinafter referred to as **"Defendant Noel"**), is a citizen and resident of Knox County, Tennessee. He is the current Chief of Police of the Police Department of the City of Knoxville, Tennessee, and was Chief of Police of the Police Department of the City of Knoxville, Tennessee when Plaintiff was terminated June 23, 2025. He is sued in his individual capacity only.

4. The Defendant Phyllis Tonkin (hereinafter referred to as **"Defendant Tonkin"**), is a citizen and resident of Knox County, Tennessee. She is employed by the City of Knoxville, Tennessee, as a Sergeant/Investigator assigned to the Internal Affairs Unit of the Police Department of the City of Knoxville, Tennessee. She is sued in her individual capacity only.

5. The Defendant Preston Huddleston (hereinafter referred to as **"Defendant Huddleston"**), it a citizen and resident of Knox County, Tennessee. He is a deputy with the Sheriff's Department of Knox County, Tennessee assigned to the Family Crime Unit. He is sued in his individual capacity only.

6. The Defendant William Wilson (hereinafter referred to as **"Defendant Wilson"**), is a citizen and resident of Knox County, Tennessee. He is employed as a Lieutenant at the Police Department of the City of Knoxville, Tennessee. He is sued in his individual capacity only.

7. The Defendant Eric Vreeland (hereinafter referred to as **"Defendant Vreeland"**), is a citizen and resident of Knox County, Tennessee. He is the Deputy Communications Director for the City of Knoxville, Tennessee. He is sued in his individual capacity only.

2

8.     This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.     This Court has venue to hear this cause under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim, which is the subject matter of this action, occurred in this judicial district.

## INTRODUCTION

10.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's clearly-established substantive due process rights secured by the Fourteenth Amendment to the United States Constitution, and Plaintiff's clearly-established procedural due process rights secured by the Fourteenth Amendment to the United States Constitution. Plaintiff was formerly employed as a police officer with the City of Knoxville, Tennessee for 19 consecutive years until his termination on June 23, 2025. Plaintiff was protected by civil service, and appealed his termination before the Civil Merit Board, and Hearing Officer Matthew McDonald. Hearing Officer McDonald affirmed the City of Knoxville, Tennessee's decision to terminate Plaintiff's employment in a written Opinion and Order entered June 1, 2026.

11.     The Plaintiff avers that the aforementioned individuals acted in concert with each other to dictate the outcome of the hearing before the Civil Merit Board and Hearing Officer McDonald. Hearing Officer McDonald was considering whether the City of Knoxville, Tennessee had met its burden to prove that Plaintiff had violated certain policy standards of the City of Knoxville, Tennessee, arising out of an alleged domestic dispute with Plaintiff's then wife, Paige Barnett Pickens, now Paige Barnett Potter, a former dispatcher, corrections officer, and presently a road deputy with the Sheriff's Department of Knox County, Tennessee in violation of his clearly-established rights under the Fourteenth Amendment to the U. S. Constitution. Plaintiff contends

3

that the City of Knoxville, Tennessee's decision to terminate him was arbitrary, irrational, and shocking to the conscience, in violation of his clearly-established Fourteenth Amendment right to substantive due process secured by the United States Constitution, and the hearing violated his clearly-established right to procedural due process under the Fourteenth Amendment to the United States Constitution.

## FACTS

12.     Plaintiff avers that this tragedy began the night of July 31/August 1, 2022, at the marital residence he shared with his then wife Paige Barnett Pickens (hereinafter "Paige"). Plaintiff was asleep on the couch in his living room when he was awakened by Paige, who had discovered what she thought was evidence of marital infidelity on Plaintiff's phone and assaulted Plaintiff by throwing his phone at him, and repeatedly striking him with her fists.

13.     Plaintiff pushed Paige off of him by grabbing her left arm and pushing her to the floor which resulted in a bruise to her hip. She then left the residence in her vehicle. A friend of Paige's texted Plaintiff and stated that Paige had taken her Zoloft medication with her, and she was concerned Paige would attempt to overdose on the medication. Plaintiff took the call seriously, although Paige had threatened suicide numerous times in the past to get attention, and had never attempted, or even come close to attempting suicide. Nevertheless, Plaintiff first texted Paige to come home, and when she did not respond, Plaintiff went out in his vehicle to look for her. At no point, did Plaintiff have any facts that Paige was impaired by the ingestion of any intoxicant. To his knowledge, Paige had one drink of bourbon earlier in the night, and was not impaired in any way.

14.     Plaintiff did locate Paige near the Walmart in South Knoxville, and pulled his truck beside her vehicle at the intersection of Norton Road and John Sevier Highway. Plaintiff rolled

4

his window down, and asked Paige several times to come home and they could talk. She looked at Plaintiff, but then sped off on John Sevier Highway disregarding a redlight. Plaintiff did not pursue Paige or call law enforcement as he did not desire to aggravate the situation for Paige's safety and the safety of others. Likewise, other than the disregard of the traffic light and speed, Plaintiff witnessed no erratic driving.

15. Paige returned home later that night, had calmed down temporarily, and stayed at the marital residence. At some point, however, Paige illegally installed an electronic tracking device in Plaintiff's truck. Approximately thirteen (13) days later on August 13, 2022, Plaintiff was accosted by Paige at the Wild Boar Restaurant in Powell, Tennessee. Plaintiff was with friends and the woman Paige suspected that Plaintiff was seeing romantically. Plaintiff walked out of the restaurant and found and disabled the tracking device in his truck. The following day, he returned home to gather some personal items as he and Paige were going to separate and divorce. She was not home when he arrived, but later came into the home and screamed at the Plaintiff to leave "her" house. Plaintiff did not touch Paige but rather left the residence. As per procedure, Plaintiff called his supervisor Sergeant Chris Bell, who arranged for Plaintiff to check in at the Howard Baker Safety Building with Lieutenants Caryn Heitz, and Travis Henry, who escorted Plaintiff back to the marital residence so that he could retrieve several items and other personal effects.

16. On August 15, 2022, Paige went and spoke with Defendant Preston Huddleston, of the Sheriff's Department Family Crime Unit. Paige obtained a warrant for Plaintiff's arrest. Paige conceded to Defendant Huddleston that she was the primary aggressor in the domestic incident with Plaintiff on the night of July 31/August 1, 2022, but, Paige insisted that, and falsely told Defendant Huddleston that Plaintiff attempted to strangle her.

5

17. Defendant Huddleston took photographs at the Family Justice Center on August 15, 2022, but despite Paige's allegations and his charges, Defendant Huddleston took no photographs of Paige's neck or collar area. Defendant Huddleston then executed all necessary documents to have Plaintiff arrested for aggravated assault based solely on Paige's baseless accusation. Defendant Huddleston did no investigation other than listen to Paige who severely lacked credibility. He did not document any physical injury, or attempt to interview any independent witness prior to arresting and charging Plaintiff with aggravated domestic assault. Paige then falsely took out an *ex parte* Order of Protection against Plaintiff which she knew had no factual basis.

18. An Office of Professional Standards, or "OPS" (OPS is simply another term utilized for an Internal Affairs Unit) investigation was opened, and assigned to an investigator. That investigator retired, and the Defendant City of Knoxville assigned Defendant Tonkin the OPS investigation in May 2023, but her first interview of any witness was not conducted until September 9, 2024, some two (2) years after the alleged incident. Of course, by this point, divorce proceedings had been commenced and Paige had voluntarily dismissed her *ex parte* Order of Protection in or around December 2023. Previously, in or around November 2023, Paige was terminated/transferred/reassigned from the position of dispatcher to corrections officer at the Sheriff's Department as a result of attendance issues having nothing to do with the Plaintiff. Paige has now transferred from her position as corrections officer to a road deputy with the Sherif's Department and is actively patrolling the County. Likewise, she has since remarried to another Sheriff's Department deputy and her name is currently Paige Barnett Potter. Plaintiff and Paige were divorced December 16, 2024, on the sole ground of irreconcilable differences. Both parties were represented by an attorney and certified to the Chancery Court for Knox County, Tennessee

6

that the Marital Dissolution Agreement, and Permanent Parenting Plan was equitable and legally sufficient pursuant to the mandates of all applicable laws.

19. In the interim, Plaintiff was indicted by the Grand Jury for aggravated domestic assault predicated on strangulation, assault, and false imprisonment. Of course, none of the charges were truthful and based solely on Paige's word and that was known to Defendant Huddleston. In fact, Defendant Huddleston did not arrange for Plaintiff and Paige's minor daughter to give an interview based on Paige's accusation until March 22, 2023. She was then 14 years of age and at the time of the alleged incident was 13 years of age. Defendant Huddleston later admitted that Plaintiff's minor daughter should have been interviewed much earlier. Further, at the preliminary hearing held in November 2022, Paige admitted that she illegally placed a GPS tracking device in Plaintiff's truck. Of course, no charges were brought.

20. On July 12, 2024, Plaintiff and his attorney T. Scott Jones appeared in the Criminal Court for Knox County, Tennessee, and Plaintiff accepted judicial diversion to the charge of misdemeanor domestic assault, and his record was expunged nunc pro tunc to be applicable that day. Plaintiff considered the case Paige, and Defendant Huddleston, brought against him to be "very weak", and simply wanted this flawed prosecution to cease. It would not have troubled Plaintiff at all to have the matter tried by a jury as he was confident of an acquittal, but Paige and Defendant Huddleston's desire to prosecute would have inevitably involved Plaintiff's minor daughter taking the stand as a witness and that was the sole reason for the disposition. In fact, the case was so weak that Plaintiff's attorney quizzed District Attorney Charme Allen why she didn't simply drop the matter and instead prosecute Paige for the illegal placement of the GPS device in Plaintiff's truck, a true and admitted crime. The District Attorney replied "optics." The City of Knoxville, Tennessee, and probably the County, receives significant funding from both the state

7

and federal government for programs concerning domestic violence. Of course, no one desired that the Defendant City of Knoxville be seen as indifferent or weak on domestic violence as that is not the case. Yet, in this case, Defendants allowed Plaintiff to be railroaded by the false accusations of one person. Hence, upon information and belief, the extraordinary nature of the disposition concerning the accusations against the Plaintiff. The charges were greatly reduced, and Plaintiff did not, as represented by Defendants Tonkin, Noel, and others, etc. plead guilty to any criminal offense. Plaintiff was judicially diverted in accordance with the statutes of the State of Tennessee which clearly state that judicial diversion is not a plea of guilty but rather a postponement in the proceedings, or if you will, a "pause" by the Court before accepting a plea pending a charged individual's completion of a diversion program. Of course, in Plaintiff's case, he had already demonstrated good behavior, remained employed as a law enforcement officer for the City of Knoxville in its Teleserve Division and was even nominated as officer of the month as late as May 2025, among other times. Accordingly, that day, whether its nunc pro tunc or not, the Court expunged Plaintiff's record, and Paige's prosecution ceased. The concept of expungement is extremely important. Tennessee law specifically provides that once an expungement has been entered, all public records of the arrest are destroyed or sequestered. Legally, it restores a person to the exact legal status they occupied before the arrest, or indictment. It is as if the proceedings never occurred. Again, unlike the representations made by the Defendant City of Knoxville, and others, Plaintiff did not plead guilty, as he was not guilty of any offense of or concerning Paige.

21. Plaintiff avers that Paige was in the courtroom on July 12, 2024, as well as Defendant Tonkin. Upon information and belief, Plaintiff avers that other officials with the Defendant City of Knoxville, or the County of Knox were present and witnessed the disposition.

8

22. Again, Defendant Tonkin did not bother to interview any witness until September 9, 2024, some two (2) years after the alleged incident, and almost two (2) months after the disposition of the criminal case Paige brought against the Plaintiff. Paige had already dismissed the *ex parte* Order of Protection in December of 2023, and Defendant Tonkin concluded her investigation December 6, 2024.

23. Defendant Tonkin's primary witness and primary source of documentary evidence was Paige. Paige supplied all photographs, emails, text messages, and a written personal timeline that Defendant Tonkin included in the investigation. Plaintiff was also interviewed by Defendant Tonkin. Defendant Tonkin did not interview Plaintiff's minor daughter, Sergeant Chris Bell, or Lieutenant Caryn Heitz or Travis Harvey. Candidly, Defendant Tonkin's investigation, or its legitimacy, rises and falls solely on Paige's credibility.

24. Defendant Tonkin had significant authentication problems with photographs submitted by Paige. Defendant Tonkin never independently verified the photographs, through Metadata, and did not seek files from Plaintiff who candidly told Defendant Tonkin during his interview that he possessed Metadata disproving the dates the photographs were allegedly taken. Further, Defendant Tonkin was forced to confirm that Paige's isolated allegation that Plaintiff engaged in domestic assault on the day she accosted him at the Wild Boar in Powell, Tennessee, was never disclosed. Actually, to her credit, Paige told Defendant Tonkin and Defendant Tonkin confirmed that Paige did not want to pursue charges against Plaintiff, did not want Plaintiff to lose his job, and did not want Plaintiff to lose any gun rights or be decertified. Paige also admitted to Defendant Tonkin that she was the primary aggressor within the meaning of T.C.A. § 36-3-619, which of course belies any charge against Plaintiff as alleged by Paige previously. Despite this, Defendant Tonkin sustained Paige's bare allegations against Plaintiff. The decision to sustain

means that the allegation is supported by sufficient evidence to believe the incident occurred, and further, that appropriate disciplinary action is recommended. Therefore, by making that finding, Defendant Tonkin knew that Plaintiff would be severely disciplined up to and including termination. Nevertheless, Defendant Tonkin, despite the existence of a multiplicity of factors that Plaintiff engaged in no misconduct, and in fact committed no crime, and further, that disposition of his criminal case was not a plea of guilty, and multiple other instances of events that were prejudicial to Plaintiff, continued to affirm the veracity of the conclusion that she made in her investigation. Defendant Tonkin finished her investigation and the investigation was closed on December 6, 2024.[1]

25. Defendant Noel terminated Plaintiff June 23, 2025. Defendant Noel had no personal knowledge of the basis for this position and he did not reinvestigate the case. Defendant Noel did review and sign off on the conclusion by Defendant Tonkin on the OPS investigation and relied on it. Defendant Noel likewise confirmed that Paige's account was the center or a "big chunk" of the termination. Defendant Noel was not present and did not witness the July 12, 2024, disposition. Defendant Noel has acknowledged that there are multiple reasons a person may plead guilty even when innocent. Defendant Noel also clearly knew the difference between judicial diversion and a standard guilty plea, and the effect of expungement. As stated, Defendant Noel certified that he had reviewed the investigation by Defendant Tonkin and certified as such on December 19, 2024, but still decided to terminate on that, and that basis alone even with the admission by Paige and the disposition reached by the criminal court. Defendant Noel told

---

[1] As Defendant Tonkin's direct line supervisor, Defendant Wilson signed off on her conclusion that the complaint against Plaintiff was sustained. In doing so, Defendant Wilson indicated that he had reviewed the investigation and agreed with the finding. Defendant Wilson certified as such December 12, 2024.

Plaintiff when he terminated him that he could go be a police officer somewhere else, but not the City of Knoxville.

26.     Yet, it is uncontroverted that despite the arrest by Defendant Huddleston on August 15, 2022, and Plaintiff's 12-hour incarceration as a direct result of that allegation, Plaintiff continued to function as a law enforcement officer for the City of Knoxville until his termination on June 23, 2025. As stated, Plaintiff was employed by the City of Knoxville for 19 years, was a dedicated employee and had an exemplary record. Plaintiff knows the law, and the seriousness of any criminal offense. He clearly knew the laws surrounding domestic violence and obviously takes them seriously

27.     In his career as a law enforcement officer, Plaintiff arrested over 100 violators of the domestic statutes of Tennessee, and after his arrest when he was placed on Teleserve, continued to report instances of domestic violence which resulted in the arrest of many. Plaintiff received Officer of the Month three (3) times and had been nominated for Officer of the Month multiple other times including May 2025. Plaintiff has served as a school resource officer, hostage negotiator, patrol officer, field training officer, the Marine unit of the City of Knoxville Police Department, and in other roles. He has been engaged in the community in several areas. Plaintiff is an individual who cares about the welfare of others and that includes Paige. It certainly includes his daughter. Yet, anyone can say anything about anyone and it is the responsibility of law enforcement to properly investigate any allegations because complainants and/or alleged victims of any offense can misrepresent facts, hide facts, fail to disclose evidence, or outright make false accusation(s).

28.     Plaintiff appealed the decision by Defendant Noel to terminate his employment to the Civil Service Merit Board where a hearing officer was appointed by Defendant City of

11

Knoxville, and the Defendant City of Knoxville had to prove by a preponderance of the evidence that Plaintiff engaged in the misconduct alleged by Defendant Tonkin and adhered to by Defendants Wilson and Noel. As stated, the hearing officer appointed was Attorney Matthew McDonald. One of the first things Hearing Officer McDonald did was issue a sealing order in this case on August 3, 2025, no doubt due to the volatility of the allegations against Plaintiff. Yet, as Plaintiff unfortunately discovered, the sealing order had no teeth as no appropriate sanction existed to prohibit the Defendant City of Knoxville, through Defendants, and others, from violating the sealing order and disseminate to the public whatever information it deemed could influence or pervert what was supposed to be an impartial hearing.

29. During the pendency of the Civil Service Board hearing, the Defendant City of Knoxville, through Defendant Wilson, sought to decertify Plaintiff as a law enforcement officer in the State of Tennessee with the Tennessee Peace Officers Standards and Training Commission or POST. Of course, if the Defendant City of Knoxville was successful in decertifying Plaintiff, not only could he not continue to serve as a law enforcement officer for the Defendant City of Knoxville, but also Plaintiff could not serve as an officer with any other department in the State of Tennessee. Plaintiff's vested rights in civil service protection and the appeal he was pursuing rested upon his continued ability to function as a certified law enforcement officer. That is because if the Defendant City of Knoxville, through Defendant Wilson, was successful in decertifying Plaintiff, he simply would have to be relieved of any duties of the law enforcement officers for the City of Knoxville as he simply did not meet the requirements of employment if decertified.

30. In any event, before the POST hearing in Gatlinburg, Tennessee on November 20, 2025, Defendant Wilson caused packets to be delivered to individual POST members about Plaintiff which contained multiple items having a prejudicial effect on Plaintiff and further, items

12

that were clearly subject to Plaintiff's expungement, and not subject to observation. On November 20, 2025, Defendant Wilson appeared before the POST Commission at a hearing where POST was to consider whether to decertify Plaintiff as requested by the Defendant City of Knoxville, through Defendant Wilson. Suffice it to say, the hearing, which was both videoed and transcribed, did not go the way the Defendant City of Knoxville or Defendant Wilson wanted. Defendant Wilson was immediately bombarded with questions as to why the Defendant City of Knoxville would even want to decertify Plaintiff, not to mention the fact that it would be improper to do so. Moreover, recognizing that he knew exactly what an expungement was, and the purpose of the sealing order Defendant Wilson continued to evade the Commission's questions and continued to state that he was prohibited from discussing any particulars. Plaintiff appeared after Defendant Wilson briefly, but was barely asked anything. The Commission correctly and thankfully decided not to decertify Plaintiff.

31.     Defendant Vreeland, who is the Defendant City of Knoxville's Deputy Communication Director, who coordinates all media requests from the City of Knoxville, including the inspection of personnel files of law enforcement officers employed by the City of Knoxville, Tennessee, allowed the media to inspect Plaintiff's personnel file which unlawfully contained redacted and expunged records and Defendants clearly knew that expungements were generally not admissible in court proceedings. The sealing order, and the laws of the State of Tennessee were designed to protect. Defendant Vreeland's decision to allow the inspection of Plaintiff's personnel file blatantly violated the sealing order, Tennessee law and any desire to provide Plaintiff with an impartial hearing. Defendant Vreeland did not notify Plaintiff as required by the statutes of Tennessee within three (3) days of the name, address and telephone number of the person who desired to make the inspection. Thus, Plaintiff had no time whatsoever to consider

the same, or even prevent the same through emergency relief with a court of competent jurisdiction. Plaintiff was not notified that his file which Plaintiff alleges contained totally inappropriate material was inspected by the media. As a result, the media published two (2) prominent articles in The Knoxville News Sentinel on January 8, 2026, and March 23, 2026, labeling and/or strongly insinuating Plaintiff was a perpetrator of domestic violence. Plaintiff alleges that the articles publicly attacked him, and disclosed publicly redacted and expunged charges against him made, but never substantiated. Defendant Vreeland knew that Plaintiff's file contained inappropriate material and further knew that if he allowed the media to inspect Plaintiff's personnel file, that the media would report on what it viewed which constituted nothing but baseless allegations lacking integrity and the botched investigation into the same. Defendant Vreeland also knew that the public dissemination of such would prejudice Plaintiff in the hearing. In fact, the Sentinel published exactly what the Defendant City of Knoxville desired: rancid allegations that could not be proven or substantiated. The articles, like the City in its decision to terminate Plaintiff and in the hearing relied solely on documents and not the source.

32. The Defendant City of Knoxville knowing good and well what it had done, offered an empty apology to Plaintiff but continued with the proceeding. The Defendant City of Knoxville put forth only three (3) witnesses, none of which had any personal knowledge of the incident. The Defendant City of Knoxville's witnesses: Defendants Tonkin, Noel and Huddleston, blanketly ignored Paige's credibility, exculpatory facts, court proceedings, and the law governing diversions and expungements. Defendants desired only to show Plaintiff was guilty of domestic assault on Paige, and should not be employed with the Defendant City of Knoxville Police Department, despite multiple facts to the contrary, which would have clearly prevented Plaintiff from receiving

14

any discipline or enduring what turned out to be a botched hearing, the integrity of which cannot be defended.

## CAUSES OF ACTION

33.     **Defendant City of Knoxville**. Defendant City of Knoxville is liable to the Plaintiff for the violation of his clearly-established Fourteenth Amendment right to procedural due process. Defendant City of Knoxville terminated Plaintiff June 23, 2025, after 19 years of service based upon the rancid allegation of one individual which cannot be substantiated either by other witnesses or tangible items of evidence. Moreover, it took the Defendant City of Knoxville almost three (3) years to terminate Plaintiff based upon the August 15, 2022, arrest and subsequent Grand Jury indictment. The decision came almost a full year after the disposition of Plaintiff's criminal case which Defendant City of Knoxville knew, but allowed other Defendants and officials with the Defendant City of Knoxville to falsely characterize as a standard guilty plea. Moreover, Defendant City of Knoxville, Tennessee, paid substantial monies to a hearing officer who correctly and immediately sealed the record, but had no power to enforce his orders with regard to the conduct of the hearing. During the pendency of the hearing, Defendant City of Knoxville applied to have Plaintiff decertified, and then against the laws of the State of Tennessee, filled Plaintiff's personnel file with unlawful material, unlawfully allowed the media to inspect Plaintiff's personnel file, unlawfully failed to notify Plaintiff of the intent to or inspection, and allowed the media to publish prominent articles concerning Plaintiff that this Defendant wanted. Defendant City of Knoxville likewise made no attempt to publicly admit or acknowledge the impropriety of its action(s). Further, the Defendant City of Knoxville continued to proceed with the hearing and vigorously attempted to convince the hearing officer that Plaintiff's termination be upheld in light of the lack of integrity of the investigation of Plaintiff based on the bare allegations of one person, who was

15

not even called by the Defendant City of Knoxville as a witness to substantiate or confirm the allegations even though she had already admitted to both Defendants Huddleston and Tonkin that she, and not Plaintiff, was the primary aggressor in the domestic situation which was the basis of Plaintiff's termination and decision by the hearing officer to uphold his termination June 1, 2026. Accordingly, the Defendant City of Knoxville is liable for violating Plaintiff's clearly-established procedural due process rights secured by the Fourteenth Amendment to the United States Constitution. Additionally, the Defendant City of Knoxville is liable for violating the clearly-established substantive due process violation of the Plaintiff's clearly-established Fourteenth Amendment right of the United States Constitution in its decision to terminate Plaintiff who has a properly interest in his employment and vigorously seek to uphold his termination before the Civil Service Merit Board through conduct which is arbitrary, capricious, and shocking to the conscience.

34. **Defendant Noel**. Defendant Noel is liable to Plaintiff under 42 U.S.C. § 1983 for the clearly-established violation of Plaintiff's clearly-established Fourteenth Amendment right to due process as secured by the United States Constitution. No allegation is made against Defendant Noel as having personal knowledge of every detail of the violation of Plaintiff's clearly-established federal constitutional rights as generally required to support liability under 42 U.S.C. § 1983, but Defendant Noel did act in concert with the other Defendants, and others, to secure the termination of Plaintiff and was actively involved in the Civil Service Merit Board hearing upholding the termination of the Plaintiff. As stated, Defendant Noel terminated Plaintiff June 23, 2025, based upon his alleged review of the OPS file created by the investigation of Defendant Tonkin, and possibly others, and his general review of court proceedings and other testimony. Of course, like Defendant City of Knoxville, Defendant Noel made no effort to personally investigate or even talk

16

with Plaintiff's accuser or even consider the flaws in the investigation or interpretation of the laws of the State of Tennessee of or concerning Plaintiff. Instead, upon information and belief, Defendant Noel fully participated in the Defendant City of Knoxville's application to decertify Plaintiff to attempt to avoid Plaintiff's right to an impartial hearing, knew of the improper material in Plaintiff's personnel file, the improper disclosure of Plaintiff's personnel file, the consequences of the improper disclosure of Plaintiff's personnel file, but still actively participated in Defendant City of Knoxville's decision to uphold the termination of Plaintiff which was made by Defendant Noel.

35.     **Defendant Tonkin**. Defendant Tonkin is liable to Plaintiff for the violation of his clearly-established rights to due process under the Fourteenth Amendment and secured by the United States Constitution. Defendant Tonkin, after being assigned the job of investigating Plaintiff for alleged violation of Department policy, delayed any investigation until September 9, 2024, and interviewed only the accuser and Plaintiff and closed the investigation less than three (3) months after she began. Defendant Tonkin likewise ignored substantial exculpatory information in her investigation of Plaintiff and sustained all allegations against Plaintiff which she knew would result in severe discipline. It is respectfully submitted that Defendant Tonkin's investigation was botched, and known by Defendant Tonkin to be flawed, and designed specifically to lead to the termination of Defendant. Plaintiff does not allege that Defendant Tonkin participated in, or had personal knowledge of every detail but acted in concert with other Defendants to ensure that Plaintiff was terminated. This Defendant manipulated facts, ignored facts, ignored the laws of the State of Tennessee, and failing to impartially investigate the underlying charge against Plaintiff which ultimately resulted in his termination.

17

36.     **Defendant Huddleston**.  Defendant Huddleston is liable to Plaintiff under 42 U.S.C. § 1983 for the violation of his clearly-established Fourteenth Amendment right to procedural due process secured by the United States Constitution.  Defendant Huddleston arrested Plaintiff August 15, 2022, without probable cause, and participated in his criminal prosecution which ultimately closed July 12, 2024.  Defendant Huddleston aided in the prosecution of Plaintiff even though he knew that the accuser was the primary aggressor in the domestic situation involving Plaintiff, did not interview the only independent witness to the alleged incident until March 23, 2023, and also willingly allowed the misinterpretation of Tennessee law to perpetrate the prosecution of Plaintiff, the termination of Plaintiff, and the hearing upholding the termination of the Plaintiff by his testimony.  Again, Plaintiff does not accuse Defendant Huddleston in participating in every detail but Plaintiff avers Defendant Huddleston was aware of the ultimate object was the termination of Plaintiff as a law enforcement officer for the City of Knoxville, Tennessee, and uphold his termination before the Civil Service Merit Board.

37.     **Defendant Wilson**.  Defendant Wilson is liable to Plaintiff under 42 U.S.C. § 1983 for the deprivation of Plaintiff's clearly-established Fourteenth Amendment right secured by the United States Constitution.  Defendant Wilson participated in the decertification proceedings of, or concerning Plaintiff on November 20, 2025, and unlawfully provided members of the Commission with inappropriate material and material that had been redacted and expunged by the disposition of Plaintiff's criminal case on July 12, 2024.  Defendant Wilson then personally appeared before the Commission and urged the Commission to decertify Plaintiff.  Defendant Wilson also signed off on Defendant Tonkin's flawed OPS investigation and knew that Defendant Tonkin's finding would result in the severe discipline of Plaintiff up unto and including termination Upon information and belief, Defendant Wilson was intimately involved in the decision to

terminate Plaintiff. Defendant Wilson knew not only of the hearing officer's sealing order, but the effect of the expungement Plaintiff obtained July 12, 2024. Moreover, Defendant Wilson also knew that Plaintiff did not plead guilty to the domestic assault of Paige, and also knew why the disposition of Plaintiff's criminal case occurred. Defendant Wilson, by his signature, completed his review of Defendant Tonkin's investigation of Plaintiff on December 12, 2024, and therefore, knew no basis existed to discipline Plaintiff. Defendant Wilson, although not having personal knowledge of every detail concerning the incident of or concerning Plaintiff acted in concert with acts the other Defendants to ensure that Plaintiff would be terminated in violation of his clearly-established Fourteenth Amendment right and his termination would be upheld in violation of his clearly-established Fourteenth Amendment rights.

38. **Defendant Vreeland.** Defendant Vreeland is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's clearly-established federal constitutional right to due process under the Fourteenth Amendment secured by the United States Constitution. Defendant Vreeland is the Deputy Communications Director of the City of Knoxville. In this position, Defendant Vreeland coordinates all media requests and preservation of the personnel files of the Defendant City of Knoxville, including current and former employees of the City of Knoxville Police Department. In that regard, Defendant Vreeland allowed the media to inspect Plaintiff's personnel file he knew contained redacted and expunged material that had not been substantiated in violation of the hearing officer's sealing order and the laws of the State of Tennessee. Defendant Vreeland likewise did not timely notify Plaintiff that his personnel file was being, or had been reviewed within three (3) days like he is mandated to do by law. He did not notify Plaintiff until 62 days after his file had been reviewed by the media and at that point, one story had already been published in The Knoxville News Sentinel. Concerning his actions, Defendant Vreeland facilitated

19

the reporting of the two (2) prominent articles contained in The Knoxville News Sentinel on January 8, 2026, and March 23, 2026. Moreover, by failing to timely notify Plaintiff, Plaintiff had no opportunity to either respond or seek emergency injunctive relief to cease the clear violation of the law. Defendant Vreeland knew the nature of the articles that would be published and that the dissemination of the articles to the public would in concert with the other Defendants affirm the termination of Plaintiff in violation of his clearly-established federal constitutional rights. Accordingly, Defendant Vreeland is liable pursuant o 42 U.S.C. § 1983.

39.     Plaintiff avers that at all times all Defendants acted under color of law. Plaintiff avers that. All individual Defendants acted maliciously, with the intent to injure him, and in reckless disregard of his clearly-established federal constitutional rights entitling him to an award of punitive damages against each individual Defendant.

WHEREFORE, as a direct and proximate result of the violation of his clearly-established federal constitutional rights, Plaintiff lost his employment, has sustained substantial fees and costs as a result of the loss of his employment, has lost wages and benefits, has lost the opportunity of employment, has lost earning capacity, and sustained severe emotional distress, humiliation, and is entitled to an award of compensatory damages in an amount to be proven at trial, and punitive damages against the individual Defendants in an amount to be proven at trial, his attorney fees and costs pursuant to 42 U.S.C. § 1988, and further demands a jury to try this cause.

Respectfully submitted this 22nd day of June, 2026.

**LAW OFFICE OF ARTHUR F. KNIGHT, III**

*/s/Arthur F. Knight, III*
Arthur F. Knight, III, BPR #016178
3248 Tazewell Pike, Suite 103
Knoxville, Tennessee 37918
Phone: 865-252-0430
art@artknightlaw.com

*Attorney for Plaintiff*

21